UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OSCAR MONTENEGRO, )
and A CLASS OF UNKNOWN PERSONS )
SIMILARLY SITUATED, ) No.
          Plaintiffs, )
           )
      vs. ) JURY DEMANDED
           )
COOK COUNTY JUVENILE PROBATION )
AND COURT SERVICES ADMINISTRATION, )
MICHAEL ROHAN, )
CHARLES YOUNG, )
ROSE MARIE GOLDEN, )
and UNKNOWN PERSONS, )
          Defendants.

## **COMPLAINT**

Plaintiff Oscar Montenegro, a probation officer with the disability of Multiple Sclerosis, employed by the Cook County Juvenile Probation And Court Services Administration ("Cook County Administration"), has instituted this action, through his attorney, Sheldon Nagelberg, based on reasonable cause that defendants Cook County Administration, Michael Rohan, Charles Young, Rose Marie Golden, and unknown persons have jointly conspired and individually engaged in a pattern and practice of disability discrimination and harassment because of the disability, resulting in a hostile work environment.

On March 26, 2013, at a meeting held to discuss a grievance made by Oscar Montenegro concerning his fitness to return to work, defendant

1

Michael Rohan stated that he was being pressured to hire able-bodied people to do the job, and that Oscar Montenegro was doing one quarter (¼) of the work compared to other officers in his unit.

This action is brought pursuant to the Americans With Disabilities Act of 1990, the Civil Rights Act of 1991, Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. 1983, 1985, as amended by the Civil Rights Act of 1991, and the Illinois Human Rights Act, 775 ILCS 5/1-101 et. seq.

## JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. 1331, 1343, 1367.

2. Venue is proper in this District pursuant to 28 U.S.C. 1391 because the events giving rise to this claim occurred in this District.

3. The Equal Employment Opportunity Commission issued a right to sue letter which Oscar Montenegro received on February 8, 2014.

## THE PARTIES

4. Plaintiff Oscar Montenegro is a citizen of the United States and a resident of the City of Chicago, Cook County, State of Illinois.

5. Defendant Cook County Juvenile Probation And Court Services Administration ("Cook County Administration") is an "employer" as defined in 42 U.S.C. 12111, 29 C.F.R. 1630.2. Cook County Administration is a branch of Cook County and State government, and is governed by the Illinois Probation and Parole Officers Act, 730 ILCS 110, et seq. The Chief Judge of

2

the Circuit Court of Cook County authorizes the Director of Court Services to appoint and employ probation officers to provide juvenile probation services, according to the mandate of the Illinois Juvenile Court Act, 705 ILCS 405/1 et seq.

6. Defendant Michael Rohan is the Director of Juvenile Probation And Court Services Administration.

7. Defendant Charles Young is the Deputy Director of Juvenile Probation and Court Services Administration.

8. Defendant Rose Marie Golden is the Director of Human Resources of Juvenile Probation and Court Services Administration.

9. Unknown Persons defendants are yet to be identified employees and agents of defendant Cook County Administration who aided and abetted defendants Rohan, Young, and Golden in their individual or conspiratorial actions to engage in a pattern and practice of disability discrimination and harassment.

## FACTS

10. Plaintiff served honorably in the United States Marine Corps from 1989 to 1993.

11. After discharge from the Marine Corps the plaintiff was diagnosed as having Multiple Sclerosis ("MS"), where the body's immune system has an abnormal response against the central nervous system. Although no two people experience the same symptoms, the most common changes are muscle

3

weakness, difficulty walking, bladder or bowel problems, fatigue, muscle spasms, lightheadedness.

12. In 1999 the plaintiff graduated from Northeastern Illinois University with a Bachelor's Degree in Criminal Justice.

13. In 2004 the plaintiff was hired as a juvenile probation officer by defendant Cook County Administration, and meets the definition of an "employee". 29 C.F.R. 1630.2. At the time of his hiring and continuing to the time of filing this Complaint the plaintiff was, and is, a "qualified individual with a disability" as those terms are defined. 29 C.F.R. 1630.2.

14. The plaintiff also fit the requirement of having the status as a "qualified" individual with a disability in that his Multiple Sclerosis did not pose a direct threat to the health or safety of himself and others. "Direct Threat" is defined as a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. 29 C.F.R. 1630.2.

15. Daniel Wynn, M.D., F.A.C.N., F.A.A.S.M., a director of clinical research, member of the National Multiple Sclerosis Society, and expert in the field of Multiple Sclerosis, has been the treating physician of plaintiff since 2002. Dr. Wynn communicated to defendant Rose Marie Golden that with plaintiff's designation as a "screening probation officer", his disability would enable him to perform the functions of this position, namely basic computer skills, navigate various software programs, data collection and

4

entry, organization of data, communication skills with teammates/workers, interviewing clients/families, ability to judge unique screening situations and determine clients' needs, make and monitor referrals for treatment services, maintain adequate records according to policy, and navigate transportation to and from work.

Although no two people with MS have the same symptoms, Dr. Wynn was of the opinion, and expressed to the defendants, that based upon the plaintiff's medical history and medical condition, he would have to be absent from work during "flare-ups" of his condition 2-3 times per year, each lasting approximately 10 days.

16. Performance appraisal evaluations of plaintiff as an intake screening probation officer from 2006 to 2013 consistently rated him as "effective, meeting standards." His immediate supervisor described plaintiff as "reliable", "turns in excellent work on a consistent basis", "assists other officers who need a Spanish translator", "is a hard worker", "helps out to the best of his ability", "a pleasure to supervise".

17. Prior to and up to approximately 2009, medically grounded accommodations for the plaintiff were accomplished by Dr. Wynn writing a letter to plaintiff's supervisor. As such, in 2008 Dr. Wynn requested in a note that plaintiff's work hours be changed to 7:00 A.M. to 3:00 P.M., as the weather is cooler, and his MS condition is affected by temperature. Defendant Rohan granted the accommodation.

5

18. Although when Dr. Wynn wrote a note to defendant Charles Young in September, 2010 requesting that plaintiff continue on with the 7:00 A.M. to 3:00 P.M. schedule and be able to use an office fan, defendant Rose Marie Golden would not accept the note, but stated in a memorandum to plaintiff that:

"All employees requesting a medical accommodation must be evaluated by the County Medical Office at 118 N. Clark Street, Room 849, Chicago, Illinois. Please see the county doctor for an evaluation within the next 15 days. It is necessary that you provide the medical office a diagnostic report (including restrictions, if any) from your personal physician".

What was a reasonable accommodation supported by a doctor's note, now became an unreasonable excuse by the defendants to subject the plaintiff to undergoing a medical examination by the county doctor.

19. In August, 2012, the plaintiff experienced a flare-up of his MS, causing him to be absent from work. Although plaintiff's absence due to the flare-up was not a "direct threat" to the health or safety of himself or others, defendant Rose Marie Golden, with the approval of defendants Rohan and Young, wrote a letter to plaintiff that:

"Prior to your return, you will be required to report to the County Medical Office…..to request a Return To Work Certification…….It is necessary that you provide the medical office a diagnostic report and release to return (including restrictions, if any) from your personal physician."

6

20. The plaintiff's method of transportation would be to be travel to and from work by a PACE bus, and with the use of a scooter, the plaintiff would transport himself from the street drop-off point to inside the Juvenile Court Building, and on to his work station in the probation screening department. Because the PACE bus arrives at approximately 3:00 P.M., the plaintiff will travel with his scooter some minutes earlier so as to not miss the bus. On January 30, 2013 defendant Rose Marie Golden wrote a memorandum to plaintiff summarizing a meeting with plaintiff on January 29 where she reprimanded plaintiff and threatened disciplinary action because she claimed to have seen him waiting at the front door of the Juvenile Court Building for the PACE bus at 2:45 P.M.

21. In February, 2013, while at his work station the plaintiff developed bladder and bowel complications resulting in diarrhea which required him to use the bathroom facilities quickly. Plaintiff requested the assistance of another coworker to help him get to the bathroom quickly. Plaintiff was not a "direct threat" to the health or safety of others, or himself. Because of the bladder and bowel complication the plaintiff was absent from work and remained home for about 4 days. When plaintiff retuned to work after his 4-day absence, he was approached at his work station by defendant Charles Young who asked "What are you doing here?" When plaintiff stated he came back to work, defendant Young tells plaintiff that he must leave because "I was a liability to my coworkers". Defendant Young then stated

7

"Did you not receive a letter that was mailed to you stating that you are a liability to your coworkers?" When plaintiff replied that he did not receive the letter, defendant Young left and returned with a copy of the letter. The plaintiff requested that he be permitted to remain at work until the PACE bus came at 3:00 P.M. Plaintiff was granted permission, but that he would not be permitted to return to work until a fitness for duty letter was issued by the County Medical Doctor.

    22. The events and actions of the defendant described in paragraphs 18, 19, 20, and 21 of this Complaint began to affect the plaintiff to the extent that he sensed that he was not wanted as a probation officer by the defendants, and that the defendants were looking for any reason to harass him, make him feel uncomfortable, and unreasonably label him as a threat to the safety of other workers.

    23. Utilizing as a pattern and practice the demand that the plaintiff not be able to work unless he was evaluated by the County Medical Doctor and given permission to return to work without any objective evidence that the defendant was a threat to the safety of other workers or himself, constituted a form of abuse and harassment.

    24. On March 26, 2013, at a meeting held to discuss the grievance made by the plaintiff that he should not have to undergo constant fitness evaluations when he is not a threat to himself or the safety of other workers, defendant Michael Rohan stated that he was being pressured to hire able-

bodied people to do the job, and that Oscar Montenegro was doing one quarter (1/4) of the work compared to other officers in his unit. Plaintiff told defendants Rohan and Golden that Dr. Wynn was very upset with the way plaintiff was being treated, and that everyone has "bad days". The defendants denied the grievance.

25. Because he could not work until a fitness evaluation was completed, plaintiff followed through with the evaluation, and returned to work in April, 2013. But when he returned the plaintiff began to notice that every morning he would notice either defendant Young or Golden walk by his work station and pause to watch him. This behavior by the defendants caused the plaintiff to feel uncomfortable and under unreasonable scrutiny. This behavior, combined with the previous conduct of the defendants described in paragraphs 18 through 24 of this Complaint caused plaintiff's emotional and physical health to deteriorate to the degree that he suffered emotional distress and a flare-up of his Multiple Sclerosis, and stopped working in June, 2013.

26. The plaintiff, as evidenced from his performance evaluations, has always enjoyed his work as a juvenile probation officer, and found it meaningful. The plaintiff desires to continue working in this position, if the conduct and attitudes of the defendants complained of cease and desist.

## COUNT ONE

### Violation of Title I of The Americans With Disabilities Act and Section 504 of the Rehabilitation Act of 1973

27. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

28. The conduct of the defendants discriminated against the plaintiff, a qualified individual, because of his disability, by utilizing methods of their administration to (1) fulfill its current goal of hiring only "able-bodied" individuals, (2) create unreasonable requirements of repeated medical testing and fitness for duty evaluations when returning to work, and the effectuation of reasonable accommodations, such as a fan, a changed work schedule, and a scooter. Such conduct created for the plaintiff a hostile work environment, exposed him to unreasonable scrutiny, and made him feel unwanted.

30. As a direct and proximate result of defendants' violation of Title I of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act of 1973, the plaintiff has suffered emotional distress, physical distress, loss of employment, and loss of wages.

## COUNT TWO

### Violation of 42 U.S.C. 1983, 1985

31. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

32. Defendants have acted under color of state law when defendants deprived plaintiff of his federal rights, and otherwise discriminated against plaintiff because of his disability.

33. The statement of defendant Rohan that he was being pressured by an unidentified person to hire able-bodied people, coupled with his false description of plaintiff as doing only one quarter of the work, and the discriminatory conduct of all defendants in their treatment of the plaintiff, evidenced the existence of a conspiracy for the purpose of depriving the class of persons with disabilities from the equal protection of the laws. The conduct of the defendants toward the plaintiff as described in this Complaint represent acts in furtherance of this conspiracy.

34. As a direct and proximate result of defendants' violations of 42 U.S.C. 1983 and 1985, the plaintiff has suffered emotional distress, physical distress, loss of employment, loss of wages.

## COUNT THREE

**Violation of the Illinois Human Rights Act**

35. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

36. Plaintiff 's Multiple Sclerosis is a "disability" and a "physical handicap" as defined in the Illinois Human Relations Act.

11

37. As a direct and proximate result of defendants' violations of the Illinois Human Rights Act the plaintiff has suffered emotional distress, physical distress, loss of employment, loss of wages.

WHEREFORE, as to all Counts, Plaintiff requests that this Court enter judgment against Defendants providing the following relief:

A. Compensatory damages in an unspecified amount, exclusive of costs and interest, that Plaintiff is found to be entitled;

B. Punitive/exemplary damages against Defendants in whatever amount , exclusive of costs and interest, that Plaintiff is found to be entitled;

C. An order placing Plaintiff back in the position that he would have been in had there been no violation of his rights;

D. An order enjoining/restraining the Defendants from further acts of discrimination;

E. An award of interest, costs, and reasonable attorney's fees;

F. Any and all other remedies provided pursuant to the Americans With Disabilities Act, Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. 1983 and 1985, and the Illinois Human Rights Act;

G. Take other appropriate nondiscriminatory measures to overcome the above described discrimination; and

H. Such other and further relief as the Court deems appropriate.

Respectfully submitted,


/s/ SHELDON NAGELBERG
Attorney for Oscar Montenegro




Sheldon Nagelberg
Sheldon Nagelberg, PC
53 West Jackson Boulevard
Suite 664
Chicago, Illinois 60604
Phone 312-305-5278
Email: sbnagelberglaw@att.net